**NOT FOR PUBLICATION**

In the
# United States Court of Appeals
For the Eleventh Circuit

---

No. 25-12403
Non-Argument Calendar

---

DANIEL M. HABTEMARIAM,

*Petitioner,*

*versus*

U.S. ATTORNEY GENERAL,

*Respondent.*

---

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A208-679-302

---

Before JORDAN, LAGOA, and KIDD, Circuit Judges.

PER CURIAM:

Daniel Habtemariam seeks review of the Board of Immigration Appeals' ("BIA") order dismissing his appeal because the BIA

found that Immigration Judge ("IJ") did not err in denying his motion to reopen. He argues that the BIA failed to give reasoned consideration to the evidence underlying his motion to reopen and abused its discretion by dismissing his case.

## I.

Habtemariam is a native and citizen of Eritrea, who entered the United States in October 2015 and applied for admission without a visa or other entry document.[1] He was interviewed by an asylum officer who found that he had a credible fear of torture. Habtemariam was issued a Notice to Appear by the Department of Homeland Security ("DHS") charging him with removability under 8 U.S.C. § 1182(a)(7)(A)(i)(I) as an applicant for admission not in possession of a valid visa or other entry or travel document. Habtemariam, pro se, filed an application for asylum, withholding of removal, and Convention Against Torture ("CAT") protection, stating that he feared imprisonment and death on account of his political opinion. In November 2015, the IJ found Habtemariam removable as charged.

In support of his claims, Habtemariam submitted identity documents and an affidavit describing widespread governmental abuses in Eritrea, including mass incarceration and indefinite military conscription, and recounting that Habtemariam's father had been jailed, questioned, and deprived by the government of his

[1] "AR" refers to the BIA Record of Appeal found at ECF 4-1 - 4-3.

livestock. The government submitted country-condition reports, including a 2015 United Kingdom Home Office report on Illegal Exit from Eritrea and the 2014 U.S. State Department human-rights report. These materials documented a shoot-to-kill policy at the border targeting those who tried to leave the country, arbitrary detention, torture of political prisoners and persons who exited illegally, and severe restrictions on political expression in a one-party state.

At the January 13, 2016, merits hearing, Habtemariam testified that Eritrean police had arrested and beaten him in March 2014 on suspicion that he had assisted others in fleeing and planned to flee himself and that he escaped custody, crossing into Ethiopia, Sudan, and other countries before reaching the United States. The IJ issued an oral decision denying Habtemariam asylum and withholding of removal but granting him withholding of removal under CAT. Habtemariam informed the IJ that he accepted the decision and did not state that he wished to appeal. Habtemariam appealed the IJ's decision to the BIA, which it dismissed because he did not present any argument that his waiver of appeal was not knowing and voluntary.

In September 2020, Habtemariam, through counsel, filed an untimely motion to reopen to apply for asylum based on changed country conditions and requesting sua sponte reopening. He contended that previously unavailable material evidence demonstrated that he would be tortured and persecuted if returned to Eritrea. He alleged that, after his 2014 departure, Eritrean authorities

had arrested and severely mistreated his father (who was released in 2017 "on the verge of death"), arrested his wife and one of his sisters (who remain unaccounted for), questioned another sister who fled to Ethiopia in 2018, and prompted his brother to flee in 2019. He further alleged that the Eritrean government revoked a food coupon relied on by his family to purchase food during the COVID-19 pandemic and that his father was forced to participate in the "People's Militia" as retribution. Habtemariam also described his participation in the Yiakl opposition movement in the United States through meetings, protests, and online activity, arguing that such activity heightened his risk.

In support of his motion to reopen Habtemariam submitted an updated asylum application, a personal affidavit, tax records, a psychological evaluation, an expert affidavit, affidavits from family members, photographs of his participation in the Yiakl movement, and various news articles and country-condition reports.

The IJ denied the motion, finding no material change in country conditions since Habtemariam's 2016 hearing. The IJ concluded that the 2014 family detentions were previously available, characterized his siblings' flight from Eritrea and his Yiakl activity as changes in personal circumstances, declining to reopen sua sponte given the existing CAT grant and the absence of a substantial likelihood of a different outcome.

Habtemariam appealed to the BIA. The BIA dismissed the appeal. It recited the procedural history and the principal evidence and affirmed the IJ's determination that Habtemariam had shown

only a change in personal circumstances rather than a material change in country conditions, found no error in the conclusion that the pre-2016 family detentions were not previously unavailable, and upheld the denial of sua sponte reopening in light of the existing CAT protection. Habtemariam timely petitioned this Court for review.

**II.**

Habtemariam first contends that the BIA failed to give reasoned consideration to the evidence underlying his motion to reopen. We are not persuaded. To enable our review, the BIA must have given "reasoned consideration" to an application for relief and made "adequate findings." *Ali v. U.S. Att'y Gen.*, 931 F.3d 1327, 1333 (11th Cir. 2019) (quotation marks omitted). We review de novo whether the BIA afforded "reasoned consideration" to a petitioner's claim. *Id.*

A reasoned-consideration examination is not a review of the agency's fact findings or legal conclusions but is a threshold determination of whether the decision is sufficient to permit review. *Id.* To show reasoned consideration, the BIA need only draft a decision that shows it "has heard and thought about the case and not merely reacted." *Id.* (quotation marks omitted, alteration adopted). While the agency has to consider all evidence submitted by a petitioner, it need not specifically address every piece of evidence. *Id.* at 1333-34. We expect the BIA to "list the basic facts of the case." *Id.* at 1336 (quotations marks omitted, alteration adopted). We have sustained reasoned-consideration claims under three sets of circumstances:

when the BIA "misstates the contents of the record, fails to adequately explain its rejection of logical conclusions, or provides justifications for its decision which are unreasonable and which do not respond to any arguments in the record." *Id.* at 1334 (quotation marks omitted).

"In some cases, however, it is practically impossible for the BIA to write a reviewable decision without discussing highly relevant evidence." *Id.* (quotation marks omitted). "[T]his situation arises when the record would compel a different outcome, absent the discussion of certain evidence." *Id.* Unless the BIA discusses that evidence, it "fails to adequately explain its rejection of logical conclusions, thus rendering the decision incapable of review." *Id.* (quotation marks omitted).

Here, Habtemariam's argument that the BIA did not provide reasoned consideration is belied by the record. The BIA provided reasoned consideration of Habtemariam's arguments and evidence because it explicitly considered his arguments, listed the basic facts of the case, and specifically noted his evidence, including the expert declaration, family affidavits, and evidence of political participation in the United States. *See Ali*, 931 F.3d at 1333. Furthermore, none of the circumstances that have previously supported a reasoned-consideration challenge is present. *Id.* at 1334.

We thus reject Habtemariam's claim that the BIA failed to give reasoned consideration to his evidence.

**III.**

Habtemariam next argues that the BIA abused its discretion in affirming the denial of his motion to reopen. He contends that the evidence established a material change in country conditions arising from the emergence of Yiakl movement activity inside Eritrea, the continued targeting of his family, and the relevance of his own political activity in the United States. For the reasons discussed below, we conclude that the BIA did not abuse its discretion in affirming the denial of the motion to reopen.

A motion to reopen in removal proceedings is particularly disfavored. *I.N.S. v. Doherty*, 502 U.S. 314, 323 (1992). We review the decision of the BIA, and the decision of the IJ to the extent that the BIA expressly adopts it. *Jiang v. U.S. Att'y Gen.*, 568 F.3d 1252, 1256 (11th Cir. 2009). We review the denial of a motion to reopen for abuse of discretion, considering "whether the BIA exercised its discretion in an arbitrary or capricious manner." *Id.* Issues not raised in a petition for review are deemed abandoned. *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005).

The BIA has broad discretion, conferred by the Attorney General, to grant or deny a motion to reopen. 8 C.F.R. § 1003.2(a); *Kucana v. Holder*, 558 U.S. 233, 250 (2010). Such motions are disfavored, especially in a removal proceeding, "where, as a general matter, every delay works to the advantage of the deportable alien who wishes merely to remain in the United States." *Doherty*, 502 U.S. at 323. The BIA may deny a motion to reopen based on: (1)

failure to establish a prima facie case, (2) failure to introduce material and previously unavailable evidence, or (3) a determination that, despite the alien's statutory eligibility for relief, he is not entitled to a favorable exercise of discretion. *Jiang*, 568 F.3d at 1256. To qualify for asylum, the applicant must establish persecution or a well-founded fear of persecution if removed to his home country. 8 U.S.C. §§ 1101(a)(42), 1158(b)(1), 1231(b)(3).

Generally, a motion to reopen must be filed within 90 days of the BIA's final administrative removal order. *See* 8 U.S.C. § 1229a(c)(7)(C)(i); 8 C.F.R. § 1003.2(c)(2). This deadline does not apply if the basis of the motion is to apply for asylum or withholding of removal and is based on material evidence of changed country conditions in the home country that could not have been discovered or presented at the previous hearing. 8 U.S.C. §1229a(c)(7)(C)(ii). To make such a showing, the noncitizen "bears a heavy burden, and must present evidence of such a nature that the BIA is satisfied that if proceedings before the IJ were reopened, with all attendant delays, the new evidence offered would likely change the result in the case." *Ali*, 443 F.3d at 813 (quotation marks omitted, alterations adopted).

In *Li v. U.S. Att'y Gen.*, a Chinese noncitizen filed a motion to reopen based on changed conditions in China, offering her own affidavit, an affidavit from her mother, and 2003, 2004, and 2005 U.S. State Department Country reports, that local officials in China had recently begun a campaign of forced sterilization. 488 F.3d 1371,

1372-73 (11th Cir. 2007). Her affidavit set out second-hand accounts of forced sterilization in her village postdating her 2004 hearing, and her mother's affidavit stated that three women in the village were forcibly sterilized. *Id.* at 1373. The 2003 State Department report stated that the one-child policy was relaxed in rural areas, despite pressure to undergo sterilization. *Id.* But the 2004 report, which was previously unavailable, reported that her home province required birth permits and employed unspecified remedial measures against unplanned pregnancies. *Id.* The 2005 report, also previously unavailable, stated that forced sterilization was prevalent in rural provinces where local officials abused their power with impunity and described forced sterilization of thousands in one province. *Id.* We vacated the denial of the motion to reopen because Li's evidence of a recent campaign of forced sterilization in her home village, consistent with recent government reports, was material and previously unavailable. *Id.* at 1375; *see also Jiang v. U.S. Att'y Gen.*, 568 F.3d 1252, 1258 (11th Cir. 2009) (holding that noncitizen established changed country conditions because she showed that China's family planning laws were being more stringently enforced in her home province since her order of removal); *Zhang v. U.S. Atty. Gen.*, 572 F.3d 1316, 1320 (11th Cir. 2009) (same).

In contrast, in *Blake v. U.S. Att'y Gen.*, a Jamaican noncitizen failed to provide material and previously unavailable evidence because his "decade-old" evidence "did not reveal anything about contemporary conditions in Jamaica." 945 F.3d 1175, 1179, 1180 (11th Cir. 2019). We also held that the BIA did not abuse its discretion in finding that Blake's risk of harm arose not from changed

country conditions but from changed personal circumstances. *Id.* at 1179. Blake's risk arose from the fact that, in 2019, he testified against a Jamaican drug king pin who had been in power since the 1990s, and likely hostile to informants since then, not because Jamaica became more hostile to informants between Blake's 2009 order of removal and 2019 testimony. *Id.* We distinguished *Blake* from *Jiang* and *Zhang* because Blake's evidence was "decade-old" and the BIA did not "ignore, overlook, or inexplicably discount" any evidence he presented. *Id.* at 1179-80 (quotation marks omitted, alteration adopted).

Here, we conclude that the agency did not abuse its discretion in denying Habtemariam's motion to reopen because he failed to introduce material and previously unavailable evidence of changed conditions in Eritrea. The post-2016 country-condition reports and the expert affidavit describe the continuation of longstanding patterns of arbitrary detention, torture of political dissenters and whose who exit illegally, and severe restrictions on expression. The expert declaration itself noted that these practices have existed since the 1990s and intensified in the early 2000s—well before Habtemariam's hearing in 2016. The BIA, therefore, reasonably determined that this evidence did not demonstrate a material change in the government's response to policial dissent or illegal exit between 2016 and 2020. Unlike the evidence in *Li* and *Jiang*, Habtemariam's submissions did not show that Eritrea's treatment of similarly situated individuals had intensified in a manner that would likely alter the outcome of the case. *See Blake*, 945 F.3d at

1179–80. The BIA's characterization of the evidence reflecting continuity rather than material change was therefore not arbitrary and capricious. Moreover, in light of the existing CAT protection, the additional evidence concerning Eritrea did not require granting the motion to reopen.

The BIA likewise did not abuse its discretion in concluding that evidence concerning Habtemariam's family members was neither new nor material. The arrests of his father, wife, and sister occurred in 2014, years before the 2016 hearing, and therefore were not previously unavailable. Any post-2016 details about the father's detention added nothing material given that arbitrary detention and torture of detainees were already established country conditions. Though Habtemariam's siblings subsequently fled to Ethiopia, they did not report having been harmed by the government and the evidence is unlikely to change the result of the proceedings. *See Ali*, 443 F.3d at 813. Finally, Habtemariam's voluntary participation in Yiakl activities in the United States constitutes a change in personal circumstances, not a change in Eritrean country conditions. *See Blake*, 945 F.3d at 1179–80.

**IV.**

For the foregoing reasons, Habtemariam's petition is denied.

**PETITION DENIED.**